# *Citation*

sr

EVANS, MCHENRY  JR

      VERSUS

BAC HOME LOAN SERVICING LP  ETAL

NO. 592275-A
STATE OF LOUISIANA
PARISH OF CADDO
FIRST JUDICIAL DISTRICT COURT

THE STATE OF LOUISIANA:  TO  **NEW PENN FINANCIAL LLC DBA**
**SHELLPOINT MORTGAGE SERVICES LLC**
**THRU CORPORATION SERVICE COMPANY**
**501 LOUISIANA AVE**
**BATON ROUGE LA 70802**
of the Parish of EAST BATON ROUGE

YOU HAVE BEEN SUED.
Attached to this Citation is a certified copy of the Petition.*  The
petition tells you what you are being sued for.

You must EITHER do what the petition asks, OR, within FIFTEEN (15) days
after you have received these documents, you must file an answer or other
legal pleadings in the Office of the Clerk of this Court at the Caddo
Parish Court House, 501 Texas Street, Room 103, Shreveport, Louisiana.

If you do not do what the petition asks, or if you do not file an answer
or legal pleading within FIFTEEN (15) days, a judgment may be entered
against you without further notice.

This Citation was issued by the Clerk of Court for Caddo Parish, on this
date April 19, 2016.

*Also attached are the following:          GARY LOFTIN, CLERK OF COURT
__  REQUEST FOR ADMISSIONS OF FACTS       MIKE SPENCE, CHIEF DEPUTY
__  INTERROGATORIES
__  REQUEST FOR PRODUCTION OF DOCUMENTS   By: _____
__                                                 Deputy Clerk

DAVID A SZWAK 4019
Attorney

A TRUE COPY -- ATTEST

_____
Deputy Clerk

NOTICE:  ALL PARTIES ARE
EXPECTED TO COMPLY WITH
ALL LOCAL COURT RULES
INCLUDING BUT NOT LIMITED
TO RULE 12 OF FAMILY LAW
DIVISION RULES.

------------------------------------------------------------------------

    These documents mean you have been sued. Legal assistance is
advisable, and you should contact a lawyer immediately. If you want a
lawyer and cannot find one, please go to www.shreveportbar.com and click
on the Lawyer Referral Service link, or go to the Shreveport Bar Center
on the third Monday of each month from 5:30 - 7:30 for a free seminar.
If eligible, you may be entitled to legal assistance at no cost to you
through Legal Services of North Louisiana, Inc; please call 222-7281
for more information.

    JUDGES AND COURT PERSONNEL, INCLUDING THE SHERIFF AND CLERK OF COURT
EMPLOYEES, CANNOT GIVE LEGAL ADVICE.

    If you are a person with a disability, reasonable accomodation and
assistance may be available to allow for your participation in the court
proceedings. Please contact the Clerk of Court's office for more information.

## SERVICE COPY

EXHIBIT 1

MCHENRY EVANS, JR.                          NUMBER: *592275-A*

Versus                                      FIRST JUDICIAL DISTRICT COURT

BAC HOME LOAN SERVICING, L.P.,
BANK OF AMERICA, N.A., THE BANK
OF NEW YORK MELLON AS TRUSTEE
FOR THE CERTIFICATE HOLDERS OF
COUNTRYWIDE ASSET BACKED SECURITIES,
INC. 2005-AB5 f/k/a THE BANK
OF NEW YORK, COUNTRYWIDE ASSET
BACKED SECURITIES, INC. 2005-AB5,
COUNTRYWIDE ASSET BACKED SECURITIES,
INC. a/k/a CWABS, INC. and NEW PENN
FINANCIAL, LLC d/b/a SHELLPOINT
MORTGAGE SERVICES, LLC                      CADDO PARISH, LOUISIANA

# P E T I T I O N

NOW INTO COURT, through undersigned counsel, comes MCHENRY EVANS, JR.,

Plaintiffs in the above entitled and captioned matter, who respectfully prays for Judgment of this

Honorable Court in the form of declaratory relief and injunctive relief against defendants, BAC

HOME LOAN SERVICING, L.P., BANK OF AMERICA, N.A., THE BANK OF NEW YORK

MELLON AS TRUSTEE FOR THE CERTIFICATE HOLDERS OF COUNTRYWIDE ASSET

BACKED SECURITIES, INC. [CWABS] 2005-AB5 f/k/a THE BANK OF NEW YORK,

COUNTRYWIDE ASSET BACKED SECURITIES, INC. [CWABS] 2005-AB5,

COUNTRYWIDE ASSET BACKED SECURITIES, INC. a/k/a CWABS, INC., and NEW

PENN FINANCIAL, LLC d/b/a SHELLPOINT MORTGAGE SERVICES, LLC, as set forth in

the following Petition:

1.

Plaintiff is a major domiciliary of Shreveport, Caddo Parish, Louisiana.

2.

Made Defendants herein are:

[a]     BAC HOME LOAN SERVICING, L.P., who may be referred to as "BAC," a foreign

limited partnership, which is operated as a mortgage servicing entity but is a subsidiary of

co-defendant BANK OF AMERICA, N.A., and it is believed to be authorized to do and

doing business in the State of Louisiana.  It may be served with process, pursuant to the

Louisiana Long-Arm statute, through its registered agent for service of process or other

authorized representative or agent at its headquarters: 6400 Legacy Drive, Plano, Texas

Page -1-

75024; and

[b]     BANK OF AMERICA, N.A., who may be referred to as "BOFA," believed to be a

foreign banking national association, licensed to do business in Louisiana and believed to

be organized in and having its principal place of business in North Carolina and operating

in Louisiana.  It may be served with process through its registered agent for service of

process: C T CORPORATION SYSTEM, 3867 PLAZA TOWER DR., BATON

ROUGE, LOUISIANA 70816; and

[c]     NEW PENN FINANCIAL, LLC d/b/a SHELLPOINT MORTGAGE SERVICES, LLC,

who may be referred to as "SHELLPOINT," a foreign limited liability company, licensed

to do business in Louisiana and organized in Delaware but having its principal place of

business in Pennsylvania and operating in Louisiana as a mortgage servicing entity.  It

may be served with process through its registered agent for service of process:

CORPORATION SERVICE COMPANY, 501 LOUISIANA AVENUE, BATON

ROUGE, LOUISIANA 70802; and

[d]     THE BANK OF NEW YORK MELLON AS TRUSTEE FOR THE CERTIFICATE

HOLDERS OF COUNTRYWIDE ASSET BACKED SECURITIES, INC. 2005-AB5

f/k/a THE BANK OF NEW YORK, COUNTRYWIDE ASSET BACKED SECURITIES,

INC. [CWABS] 2005, who may be referred to as "BOFA," believed to be a foreign

banking national association, not licensed to do but doing business in Louisiana and

believed to be organized in and having its principal place of business in New York.  It has

acted directly and by and through its agents-co-defendants as described herein.  It is the

Trustee of various pooling and servicing agreements and Indenture Trustee under various

Indentures.  It is the Trustee of CWABS 2005-AB5, a securities feature holding an

interest and rights in plaintiff's subject mortgage loan account, note and mortgage.  It may

be served with process, pursuant to the Louisiana Long-Arm statute, through its registered

agent for service of process or other authorized representative or agent at its headquarters:

225 Liberty Street, Manhattan, New York 10281; and

[e]     COUNTRYWIDE ASSET BACKED SECURITIES, INC. a/k/a CWABS, INC.,

[CWABS], who may be referred to as "BOFA," believed to be a foreign banking and

securities entity, not licensed to do but doing business in Louisiana. It has acted directly

and by and through its agents-co-defendants as described herein.  It is a holder of an

interest and rights in plaintiff's subject mortgage loan account, note and mortgage.  It may

be served with process, pursuant to the Louisiana Long-Arm statute, through its registered

agent for service of process or other authorized representative or agent at its headquarters:

4500 Park Granada, Calabasas, California 91302.

Defendants are both believed to be parties in interest in the matters described herein and are

believed to have rights sought to be affected herein. La. CCP art. 1871, et. seq.

3.

BAC is owned in 0.1% part by BAC GP, LLC and in 99.9% part by BANA LP, LLC.

Both BAC GP, LLC and BANA LP, LLC are wholly owned subsidiaries of BOFA.  BAC GP,

LLC and BANA LP, LLC, are believed to be intermediary subsidiaries of insignificant

consequence in this litigation.

4.

BOFA is 100% owned by BANA Holding Corp., which is 100% owned by BAC North

America Holding Company.  BAC North America Holding Company is 100% owned by NB

Holdings Corp., which is in turn 100% owned by Bank of America Corp., whose shares are

publicly traded.  No public company has an ownership interest of 10% or more in BOFA.  Bank

of America Corporation does not have any parent corporations and no publicly-held company has

an ownership interest of 10% or more in Bank of America Corporation.

5.

Plaintiff respectfully asserts that this Honorable Court has subject matter jurisdiction in

this case as a court of competent jurisdiction.  Venue is proper as this Parish is the location: [1]

where the subject mortgage between plaintiff and defendants, individually or as assignee or as

servicer, was entered into; [2] where the plaintiff is domiciled; [3] where defendants have

demanded performance from plaintiff; [4] where defendants committed acts falsely declaring

plaintiff's status and rights; [5] where defendants' acts in breach occurred with respect to

plaintiff; [6] where the subject immovable property is located; [7] where the mortgage is

recorded; [8] where defendants threaten to take action against plaintiff based on the mortgage;

and [9] substantially, all of the underlying events took place in this Parish and State.

6.

Plaintiff respectfully requests that this Honorable Court enter Judgment declaring the rights, status and other legal relations between these parties and granting injunctive relief to plaintiff and against defendants ordering defendants to do certain things and not to do certain things.

7.

In November, 2005, plaintiff purchased immovable property in Shreveport, Caddo Parish, Louisiana, financed the balance of purchase price and acquired a primary mortgage with Countrywide Lending.

8.

In 2008, plaintiff's Countrywide loan and mortgage was assigned to BOFA.

9.

Plaintiff made efforts to refinance away from BOFA as he wanted a fixed rate not an adjustable rate [ARM].

10.

Due to a multitude of problems involving Countrywide's mortgage accounting and credit reportings on consumer loans, plaintiff was unable to refinance.

11.

In 2008, BOFA was servicing plaintiff's mortgage loan as well as maintaining its status as the holder, by assignment, of plaintiff's note and attendant mortgage.

12.

Between February 2009 and May 2009, BOFA claimed that plaintiff was 60+-90+ days delinquent on the mortgage loan.  Plaintiff was not delinquent and had timely and fully made the payments owed on the loan.

13.

Between February 2009 and May 2009, BOFA and plaintiff communicated and plaintiff again expressed an interest in refinancing away from BOFA and into a fixed rate loan and mortgage and BOFA claimed that plaintiff should consider a loan modification with BOFA, but that to qualify, plaintiff must be delinquent on his loan and mortgage.

14.

It is widely known now that BOFA falsely told thousands of consumers that BOFA could only offer loan modifications to the consumers-debtors on the mortgage loans if the consumer stopped paying and became delinquent, which resulted in large damages to those consumers and, based on delinquency credit reportings, made those consumers captive to BOFA as the negative reportings caused other lenders not to assist those consumers.

15.

Plaintiff never agreed to apply for a loan modification with BOFA and plaintiff kept timely and fully paying his mortgage loan payments to BOFA.

16.

BOFA wrote plaintiff claiming plaintiff was delinquent on his payments even though plaintiff never agreed to apply for a loan modification with BOFA and plaintiff kept timely and fully paying his mortgage loan payments to BOFA.

17.

Plaintiff made his payments from his bank account with VAC Credit Union, now Bossier Federal Credit Union.

18.

BOFA also wrote plaintiff and claimed that it had "escrowed" funds from plaintiff's payments even though BOFA had no right to do so and no escrow was provided for in the mortgage.

19.

Plaintiff contested BOFA's actions to BOFA yet BOFA falsely responded that plaintiff had a loan modification pending and that is why BOFA escrowed funds.

20.

In May 2009, plaintiff lodged disputes to the national consumer reporting agencies, with whom BOFA has/had subscriber contracts, and plaintiff contested the false credit reportings by BOFA which claimed that plaintiff was delinquent 60+-90+ days on the subject mortgage loan. Plaintiff was not delinquent on his loan payments.

21.

Thereafter, BOFA false credit reportings were removed from plaintiff's credit reports.

22.

One year later, in April 2010, plaintiff learned that BOFA had now reported plaintiff as

5x30+ days delinquent and claimed that plaintiff became delinquent as of December, 2009,

which was false.  Plaintiff again contested the false credit reportings by BOFA to the national

consumer reporting agencies, with whom BOFA has/had subscriber contracts and to whom

BOFA furnished the false information yet again.

23.

BOFA/BAC also reported false information about the mortgage loan payment status to a

second national consumer reporting agency and claimed plaintiff was 3x30+ days delinquent,

which was equally false as plaintiff was never delinquent.  Over plaintiff's disputes, BOFA/BAC

confirmed the false reportings causing those reportings to initially remain.

24.

In July 2010, plaintiff filed a dispute with BAC/BOFA due to the unauthorized and

alleged loan modification that BOFA and BAC were claiming as a basis for the miscalculations

and misapplications of loan payments and "escrow" of funds and other failures to apply loan

payments as called for in the subject mortgage loan documents.

25.

Despite BOFA's/BAC's verification/confirmation of the false credit reportings by

BOFA/BAC, Equifax Information Services removed the false reportings from plaintiff's credit

files and reports, at that time.

26.

In July 2010, plaintiff lodged a dispute and complaint with the Federal Trade

Commission concerning BOFA's and BAC's conduct.  BOFA and BAC were notified of the

dispute and complaint.

27.

In August 2010, plaintiff lodged a dispute with the Office of the Comptroller of the

Currency concerning BOFA's and BAC's conduct.  BOFA and BAC were notified of the dispute

and complaint.

28.

In October 2010, plaintiff received a series of force-place insurance notices from

BOFA's/BAC's related and alleged insurance company which claimed that force-placed insurance was issued on plaintiff's property based on BOFA's/BAC's request and claim that plaintiff had no hazard insurance.   These claims were also false.  Plaintiff had always maintained his insurance, paid his insurance premiums and there was no change or lapse in coverages.

29.

BOFA/BAC also tried to fraudulently invoice plaintiff, through his statements, for the illegal force-place insurance.

30.

BOFA/BAC also claimed to use monies from escrow to pay for the force-place insurance. There was no such authorized escrow and plaintiff had paid for his own insurance from the inception.

31.

Plaintiff continued to try and refinance with a new lender yet BOFA's and BAC's false credit reportings and accountings concerning plaintiff's mortgage loan prevented refinance.

32.

In April 2011, BOFA wrote plaintiff and claimed that it did not receive plaintiff's monthly installment payment on the subject mortgage loan.  Plaintiff had proof that the payment was transacted by BOFA and disputed BOFA's latest bogus claim.

33.

In June 2011, plaintiff learned that BOFA/BAC had published false credit reportings about plaintiff and claimed that plaintiff was 16x30+ days delinquent, meaning BOFA claimed that each month payment was received but was 30+ days delinquent respectively.

34.

BOFA's/BAC's persistent and illegal escrow of plaintiff's payments resulted in the alleged and false reportings of these alleged successive "30+" reportings.

35.

Once again, plaintiff lodged proper disputes to the national consumer reportings agencies and to BOFA and BAC contesting the false delinquency reportings by BOFA and BAC concerning the subject mortgage loan.

36.

In July 2011, BOFA wrote plaintiff and said that effective July 3, 2011, the servicing of plaintiff's mortgage loan would be solely assigned to BAC and BOFA claimed that the balance of the loan was $58,000+.  Further BOFA claimed that plaintiff's monthly installment payment was too small and BOFA continued to improperly use an escrow account and escrow calculations which were improper.

37.

In July and August 2011, BOFA sent plaintiff conflicting letters concerning the mortgage loan status and payments allegedly due and owing.

38.

In August 2011, plaintiff's counsel wrote a detailed qualified written request [QWR] to BOFA/BAC and outlined details of the history of the mortgage and demanded a corrected accounting and asserted other demands.  The letter again explained that plaintiff was never in arrears or delinquent and explained that plaintiff was never without hazard insurance.

39.

Despite receipt of the August QWR letter, in September 2011, BOFA wrote plaintiff and continued to claim that plaintiff underpaid his monthly installment payments due.

40.

Despite receipt of the August QWR letter, in October 2011, BOFA wrote plaintiff and continued to claim that plaintiff failed to provide adequate proof of hazard insurance.

41.

In November 2011, plaintiff learned that BOFA/BAC had published false credit reportings about plaintiff and claimed that plaintiff was 18x30+ days delinquent allegedly from December 2009 to July 2011, meaning BOFA claimed that each month payment was received but was 30+ days delinquent respectively.

42.

In November 2011, BOFA also wrote plaintiff and continued to claim that plaintiff failed to provide adequate proof of hazard insurance.

43.

BOFA's claims were false as plaintiff repeatedly supplied more than acceptable proof that

he maintained insurance coverages on the property made subject of the loan and mortgage.

44.

In January 2012, plaintiff again tried to refinance away from BOFA.  BOFA continued to falsely claim escrowed sums.

45.

Based on plaintiff's persistent protestations, the false credit reportings by BOFA and BAC were removed from his credit files and published reports.

46.

From June to September 2013, plaintiff continued in his efforts to refinance however BOFA and BAC continued to report improper information and accounting of the mortgage loan which prevented refinance.

47.

As of November 2014, BOFA/BAC claimed that plaintiff's mortgage loan balance, that started in 2005 as $60,000, was now $54,000+.

48.

In January 2015, plaintiff's credit reports reflected no delinquencies in relation to the reportings by BOFA and BAC.

49.

In January 2015, BOFA and BAC continued to charge plaintiff improperly and illegally for force-place insurance in plaintiff's property, to charge such insurance to plaintiff's loan, and continued to improperly escrow funds received from plaintiff.

50.

In April 2015, BOFA/BAC wrote plaintiff and stated that plaintiff's payments were being held as "unapplied funds."

51.

Over and over, plaintiff had contested BOFA's/BAC's force-place insurance scheme and the escrow account/unapplied funds scheme and disputed the false accounting and credit reportings.

52.

In May 2015, BOFA/BAC wrote plaintiff and stated that plaintiff failed to make his

monthly payment.  That claim was false.

53.

In May 2015, BOFA/BAC wrote plaintiff and stated that plaintiff was delinquent as of
May 2015.

54.

In May 2015, BOFA/BAC wrote plaintiff and issued a written notice of intent to
accelerate and to foreclose.  The notice claimed plaintiff was in arrears $1,212.

55.

In May 2015, BOFA/BAC wrote plaintiff and again claimed to force place insurance and
charged plaintiff, illegally and improperly.

56.

In May 2015, BOFA/BAC wrote plaintiff and claimed to extract funds from an escrow
account.

57.

Also, in May 2015, BOFA's/BAC's alleged force-place insurer "QBE Insurance" wrote
plaintiff and claimed it terminated the force-place insurance coverage that BOFA/BAC had
placed.

58.

Plaintiff again wrote a dispute letter to BOFA/BAC contesting the alleged delinquencies
and false charges.

59.

Thereafter, BOFA/BAC continued to send plaintiff incorrect monthly statements, alleged
escrow statements, demanded payment of incorrect sums and refused to provide accurate
accountings and credit reportings.

60.

On January 22, 2016, SHELLPOINT wrote plaintiff and claimed that plaintiff was 30+
days delinquent on the subject mortgage loan.

61.

On February 17, 2016, SHELLPOINT wrote plaintiff and claimed that plaintiff owed
$2,294+, and that the loan balance was $53,277+.

62.

On February 22, 2016, SHELLPOINT wrote plaintiff and issued a Notice of Default and Intent to Accelerate. SHELLPOINT claimed that it was the servicer of the mortgage loan for BOFA, as defined herein, and threatened foreclosure.

63.

On February 29, 2016, plaintiff wrote SHELLPOINT and disputes the account statement and summary accounting.  SHELLPOINT improperly and illegally assessed P&I.  Plaintiff disputed alleged delinquencies.  Plaintiff contested the escrow account existence and placement of funds in such an alleged account.  Plaintiff contested the force-place insurance and demanded a proper accounting.

64.

In March 2016, BOFA/BAC wrote plaintiff and said the servicing of plaintiff's mortgage loan would be now be assigned to SHELLPOINT.

65.

On March 19, 2016, SHELLPOINT wrote plaintiff and claimed that plaintiff owed $2,871+, and that the loan balance was $53,277+.

66.

Defendants have threatened plaintiff, in writing, with "foreclosure" in recent communications and have threatened to take legal action against plaintiff.   Foreclosure would result in irreparable harm and injury to plaintiff as he would lose his home and property.

67.

Plaintiff seeks injunctive relief against defendants, as follows:

[a]    ordering defendants to render a complete accounting of all monies taken in from plaintiff in connection with the subject mortgage loan account;

[b]    ordering defendants to cease placing force-place insurance in connection with the subject mortgage loan account;

[c]    ordering defendants to cease using an escrow account in connection with the subject mortgage loan account;

[d]    ordering defendants to cease placing installment payments in suspense or as "unapplied" in connection with the subject mortgage loan account;

[e]    ordering defendants to cease publishing derogatory and purported delinquency credit

reportings pertaining to plaintiff in connection with the subject mortgage loan account;

[f]    ordering defendants to retract and suppress the prior publication to any third persons,

including consumer reporting agencies, of derogatory and purported delinquency credit

reportings pertaining to plaintiff in connection with the subject mortgage loan account;

[g]    ordering defendants to retract and cease publishing communications to plaintiff

threatening pre-foreclosure notices and impending foreclosure in connection with the

subject mortgage loan account;

[h]    ordering defendants to retract and erase P&I charges, force-place insurance charges,

inspection charges, late charges, tax charges, and other added charges assessed to the

subject mortgage loan account;

[i]    ordering defendants to cease placing P&I charges, force-place insurance charges,

inspection charges, late charges, tax charges, and other added charges assessed to the

subject mortgage loan account;

[j]    ordering defendants to fully account for and return to plaintiff funds which defendants

improperly placed into an alleged escrow account in connection with the subject

mortgage loan account; and

[k]    ordering defendants to identify the proper mortgage servicer in connection with the

subject mortgage loan account.

68.

Plaintiff seeks declaratory judgment against defendants, as follows:

[a]    declaring an accurate and complete accounting of plaintiff's subject mortgage loan

account;

[b]    declaring that defendants improperly placed force-place insurance in connection with of

plaintiff's subject mortgage loan account;

[c]    declaring that defendants improperly created and used an escrow account in connection

with plaintiff's subject mortgage loan account;

[d]    declaring that defendants improperly placed plaintiff's payments in suspense or as

"unapplied" in connection with plaintiff's subject mortgage loan account;

[e]    declaring that defendants improperly published derogatory and delinquency credit

reportings to third persons, including consumer reporting agencies, pertaining to plaintiff in connection with plaintiff's subject mortgage loan account;

[f]   declaring that defendants must retract and suppress the prior publication to any third persons, including consumer reporting agencies, of derogatory and delinquency credit reportings pertaining to plaintiff in connection with plaintiff's subject mortgage loan account;

[g]   declaring that defendants must retract and cease publishing communications to plaintiff threatening pre-foreclosure notices and impending foreclosure in connection with plaintiff's subject mortgage loan account;

[h]   declaring that defendants must retract and erase P&I charges, force-place insurance charges, inspection charges, late charges, tax charges, and other added charges assessed to plaintiff's subject mortgage loan account;

[i]   declaring that defendants must cease placing P&I charges, force-place insurance charges, inspection charges, late charges, tax charges, and other added charges assessed to plaintiff's subject mortgage loan account;

[j]   declaring that defendants fully account for and return to plaintiff funds which defendants improperly placed into an alleged escrow account in connection with plaintiff's subject mortgage loan account;

[k]   declaring that defendants breached the terms of the plaintiff's loan and mortgage; and '

[l]   declaring that plaintiff timely and fully paid his mortgage installment payments to the proper agent for defendants and that plaintiff is not in breach of the terms of the plaintiff's loan and mortgage.

WHEREFORE PLAINTIFF MCHENRY EVANS, JR,. PRAYS that, after all due proceedings are had, there be injunctive relief entered against defendants and for declaratory judgment herein in favor of MCHENRY EVANS, JR., and against defendants declaring and establishing the rights, status and legal relations between the parties as requested herein above, at defendants' costs, including:

[1]   Plaintiff seeks injunctive relief against defendants, as follows:

[a]   ordering defendants to render a complete accounting of all monies taken in from plaintiff in connection with the subject mortgage loan account;

Page -13-

[b]   ordering defendants to cease placing force-place insurance in connection with the subject mortgage loan account;

[c]   ordering defendants to cease using an escrow account in connection with the subject mortgage loan account;

[d]   ordering defendants to cease placing installment payments in suspense or as "unapplied" in connection with the subject mortgage loan account;

[e]   ordering defendants to cease publishing derogatory and purported delinquency credit reportings pertaining to plaintiff in connection with the subject mortgage loan account;

[f]   ordering defendants to retract and suppress the prior publication to any third persons, including consumer reporting agencies, of derogatory and purported delinquency credit reportings pertaining to plaintiff in connection with the subject mortgage loan account;

[g]   ordering defendants to retract and cease publishing communications to plaintiff threatening pre-foreclosure notices and impending foreclosure in connection with the subject mortgage loan account;

[h]   ordering defendants to retract and erase P&I charges, force-place insurance charges, inspection charges, late charges, tax charges, and other added charges assessed to the subject mortgage loan account;

[i]   ordering defendants to cease placing P&I charges, force-place insurance charges, inspection charges, late charges, tax charges, and other added charges assessed to the subject mortgage loan account;

[j]   ordering defendants to fully account for and return to plaintiff funds which defendants improperly placed into an alleged escrow account in connection with the subject mortgage loan account; and

[k]   ordering defendants to identify the proper mortgage servicer in connection with the subject mortgage loan account; and

[2]   Plaintiff seeks declaratory judgment against defendants, as follows:

[a]   declaring an accurate and complete accounting of plaintiff's subject mortgage loan account;

Page -14-

[b]   declaring that defendants improperly placed force-place insurance in connection with of plaintiff's subject mortgage loan account;

[c]   declaring that defendants improperly created and used an escrow account in connection with plaintiff's subject mortgage loan account;

[d]   declaring that defendants improperly placed plaintiff's payments in suspense or as "unapplied" in connection with plaintiff's subject mortgage loan account;

[e]   declaring that defendants improperly published derogatory and delinquency credit reportings to third persons, including consumer reporting agencies, pertaining to plaintiff in connection with plaintiff's subject mortgage loan account;

[f]   declaring that defendants must retract and suppress the prior publication to any third persons, including consumer reporting agencies, of derogatory and delinquency credit reportings pertaining to plaintiff in connection with plaintiff's subject mortgage loan account;

[g]   declaring that defendants must retract and cease publishing communications to plaintiff threatening pre-foreclosure notices and impending foreclosure in connection with plaintiff's subject mortgage loan account;

[h]   declaring that defendants must retract and erase P&I charges, force-place insurance charges, inspection charges, late charges, tax charges, and other added charges assessed to plaintiff's subject mortgage loan account;

[i]   declaring that defendants must cease placing P&I charges, force-place insurance charges, inspection charges, late charges, tax charges, and other added charges assessed to plaintiff's subject mortgage loan account;

[j]   declaring that defendants fully account for and return to plaintiff funds which defendants improperly placed into an alleged escrow account in connection with plaintiff's subject mortgage loan account;

[k]   declaring that defendants breached the terms of the plaintiff's loan and mortgage; and '

[l]   declaring that plaintiff timely and fully paid his mortgage installment

payments to the proper agent for defendants and that plaintiff is not in

breach of the terms of the plaintiff's loan and mortgage.

FURTHER PRAYS for all general, equitable or otherwise proper relief.

Respectfully submitted,

Bodenheimer, Jones & Szwak, LLC

By: _____
David A. Szwak, La.BR #21157, TA
416 Travis Street, Suite 1404
Mid South Tower
Shreveport, Louisiana 71101
(318) 424-1400
FAX 221-6555
**Counsel for Plaintiff**

ENDORSED FILED
JIM SCOTT, Deputy Clerk

APR 19 2016

A TRUE COPY – ATTEST

CADDO PARISH DEPUTY CLERK

**PLEASE ISSUE SERVICE OF CITATION AND PETITION:**

[a]   BAC HOME LOAN SERVICING, L.P.,
It may be served with process, pursuant to the Louisiana Long-Arm statute, through:
President/CEO, BAC HOME LOAN SERVICING, L.P.
6400 Legacy Drive, Plano, Texas 75024;
*PLEASE ISSUE LONG-ARM CITATION AND PETITION TO PLAINTIFF'S COUNSEL.*

and

[b]   BANK OF AMERICA, N.A.
It may be served with process through its registered agent for service of process: C T
CORPORATION SYSTEM, 3867 PLAZA TOWER DR., BATON ROUGE, LOUISIANA
70816;

and

[c]   NEW PENN FINANCIAL, LLC d/b/a SHELLPOINT MORTGAGE SERVICES, LLC
It may be served with process through its registered agent for service of process:
CORPORATION SERVICE COMPANY, 501 LOUISIANA AVENUE, BATON ROUGE,
LOUISIANA 70802;

and

[d]   THE BANK OF NEW YORK MELLON AS TRUSTEE FOR THE CERTIFICATE
HOLDERS OF COUNTRYWIDE ASSET BACKED SECURITIES, INC. 2005-AB5
f/k/a THE BANK OF NEW YORK, COUNTRYWIDE ASSET BACKED SECURITIES,
INC. [CWABS] 2005
It may be served with process, pursuant to the Louisiana Long-Arm statute, through:
President/CEO, THE BANK OF NEW YORK MELLON AS TRUSTEE FOR THE
CERTIFICATE HOLDERS OF COUNTRYWIDE ASSET BACKED SECURITIES, INC. 2005-
AB5 f/k/a THE BANK OF NEW YORK, COUNTRYWIDE ASSET BACKED SECURITIES,
INC. [CWABS] 2005,
225 Liberty Street, Manhattan, New York 10281;
*PLEASE ISSUE LONG-ARM CITATION AND PETITION TO PLAINTIFF'S COUNSEL.*

and

[e]      COUNTRYWIDE ASSET BACKED SECURITIES, INC. a/k/a CWABS, INC.,
         [CWABS]

It may be served with process, pursuant to the Louisiana Long-Arm statute, through:
President/CEO, COUNTRYWIDE ASSET BACKED SECURITIES, INC. a/k/a CWABS, INC.
4500 Park Granada, Calabasas, California 91302.
*PLEASE ISSUE LONG-ARM CITATION AND PETITION TO PLAINTIFF'S COUNSEL.*